THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
CIVIL CASE NO. 1:10cv273

| | |
|---|---|
| TERESA DARLENE McHONE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | **MEMORANDUM OF** |
| vs. ) | **DECISION AND ORDER** |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

**THIS MATTER** is before the Court on the parties' Motions for Summary Judgment [Docs. 8 & 10].

**I.  PROCEDURAL HISTORY**

Plaintiff Teresa Darlene McHone filed an application for a period of disability and disability insurance benefits and Supplemental Security Income on July 5, 2005, alleging that she became disabled as of May 15, 2005. [Transcript ("T.") 73-74]. The Plaintiff's application was denied initially and on reconsideration. [T. 41-43, 45-49]. A hearing was held before Administrative Law Judge ("ALJ") Francis Talbot on March 31, 2008. [T. 591-607]. On June 14, 2008, the ALJ issued a decision denying the Plaintiff benefits. [T. 18-25]. The Appeals Council accepted additional evidence but denied the Plaintiff's

request for review. [T. 8-11]. On October 10, 2010, the Council set aside its earlier decision and considered additional information provided by Plaintiff's counsel but again denied review, thereby making the ALJ's decision the final decision of the Commissioner. [T. 4-7]. The Plaintiff has exhausted her available administrative remedies, and this case is now ripe for review pursuant to 42 U.S.C. § 405(g).

## II. STANDARD OF REVIEW

The Court's review of a final decision of the Commissioner is limited to (1) whether substantial evidence supports the Commissioner's decision, see <u>Richardson v. Perales</u>, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971), and (2) whether the Commissioner applied the correct legal standards, <u>Hays v. Sullivan</u>, 907 F.2d 1453, 1456 (4th Cir. 1990). The Court does not review a final decision of the Commissioner <u>de novo</u>. <u>Smith v. Schweiker</u>, 795 F.2d 343, 345 (4th Cir. 1986).

The Social Security Act provides that "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive. . . ." 42 U.S.C. § 405(g). The Fourth Circuit has defined "substantial evidence" as "more than a scintilla and [doing] more than creat[ing] a suspicion of the existence of a fact to be established. It means

such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Smith v. Heckler, 782 F.2d 1176, 1179 (4th Cir. 1986) (quoting Perales, 402 U.S. at 401, 91 S.Ct. at 1427).

The Court may not re-weigh the evidence or substitute its own judgment for that of the Commissioner, even if it disagrees with the Commissioner's decision, so long as there is substantial evidence in the record to support the final decision below. Hays, 907 F.2d at 1456; Lester v. Schweiker, 683 F.2d 838, 841 (4th Cir. 1982).

## III. THE SEQUENTIAL EVALUATION PROCESS

In determining whether or not a claimant is disabled, the ALJ follows a five-step sequential process. 20 C.F.R. §§ 404.1520, 416.920. If the claimant's case fails at any step, the ALJ does not go any further and benefits are denied. Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995).

First, if the claimant is engaged in substantial gainful activity, the application is denied regardless of the medical condition, age, education, or work experience of the applicant. 20 C.F.R. §§ 404.1520, 416.920. Second, the claimant must show a severe impairment. If the claimant does not show any impairment or combination thereof which significantly limits the claimant's physical or mental ability to perform work activities, then no severe impairment

3

is shown and the claimant is not disabled. Id. Third, if the impairment meets or equals one of the listed impairments of Appendix 1, Subpart P, Regulation 4, the claimant is disabled regardless of age, education or work experience. Id. Fourth, if the impairment does not meet the criteria above but is still a severe impairment, then the ALJ reviews the claimant's residual functional capacity (RFC) and the physical and mental demands of work done in the past. If the claimant can still perform that work, then a finding of not disabled is mandated. Id. Fifth, if the claimant has a severe impairment but cannot perform past relevant work, then the ALJ will consider whether the applicant's RFC, age, education, and past work experience enable the performance of other work. If so, then the claimant is not disabled. Id.

## IV. FACTS AS STATED IN THE RECORD

Plaintiff was 45 years old at the time of her hearing and had an eighth grade education. [T. 556, 591]. She alleges that she is disabled by back and hip pain and sequelae from bilateral hip replacements in January and August 2006, obesity, fatty liver disease, gastroesophageal reflux disease (GERD), diabetes mellitus and hypertension.

Approximately nine months after ALJ Talbot reached the decision appealed from herein, Plaintiff filed a new disability claim which was ultimately

4

allowed by ALJ Davenport effective as of the date of that subsequent application. [Doc. 9-1]. Plaintiff urges the Court's consideration of that decision because ALJ Davenport, unlike ALJ Talbot, considered the Plaintiff's obesity in that determination.

Medical records demonstrate pain and limitations consistent with her claims. Degenerative changes in her cervical spine and high blood pressure were noted in 2002. [T. 442]. She had degenerative disease in both knees as of January 2004. [T. 406-7]. An MRI dated March 28, 2005 shows deformities in both hips related to congenital dysplasia, bilateral osteoarthritis, mild subchondral collapse of the right femoral head, and possible prior avascular necrosis. [T. 410]. Shortly after her onset date, a State Agency disability interviewer observed Plaintiff's legs to be different lengths and that she had problems with walking. [T. 76]. In a visit to the Buncombe County Health Department on May 26, 2005, it was noted that Plaintiff weighed 146 pounds and had a BMI of 29.5. She reported at that time that pain prevented her from sleeping. She was referred to physical therapy and for orthopedic services at Bowman Gray Hospital. [T. 445].

Physical therapy records from June 2005 indicate postural defects in her hips and lumbar spine and considerable limitation in her lumbar extension.

5

[T. 416]. She reported having pain ranging from 7 to 9 on a ten-point scale, as well as significant back pain at night that interrupted sleep. [T. 416].

Plaintiff underwent bilateral hip replacements in January 2006 (left hip) and August 2006 (right hip). Both before and after these surgeries, she regularly complained of hip and back pain. She rated her pain consistently above a five on a ten-point scale. On a daily basis, she was taking eight Vicodin, a narcotic painkiller, along with Flexeril, a muscle relaxer. [T. 308]. She also complained of pain in her groin: one specialist found that an S1 impingement was the cause of this pain, while another could not rule it out.[1] [T. 308, 204, 206]. Deep vein thrombosis developed in the inguinal area after the second hip surgery. [T. 216]. Plaintiff used a walker temporarily after her hip replacement surgeries.

Headaches, high blood pressure, fatty liver issues and hip pain continued through 2008, and featured muscle spasm. [T. 537, 529-52]. At her hearing, Plaintiff testified that she could lift 10 to 15 pounds, for "just a few minutes" [T. 597], and that she had problems reaching up with her arms. She testified that she could not go up steps or walk far. [T. 598-99]. She reported having used a cane for some time. [T. 599]. Plaintiff testified that she did not

---

[1]That specialist noted that facet joint arthritis also could be causing the pain that she was experiencing. [T. 206].

6

sleep well due to pain. [T. 600]. She stated that her medications relaxed her but did not "get at" her pain. [T. 600]. She further stated that when she "did a lot," her back and hip pain rated eight on a ten-point scale, while her knee and arm pain rated a six or seven. [T. 600, 601]. Plaintiff reported daily headaches which did not always respond to medication. [T. 601]. She stated that she had gained about 35 pounds since her surgery, and that exercise was painful. [T. 602-03]. She reported that she was limited in her ability to clean and dress herself. [T. 603-04].

Evidence accepted by the Appeals Council addresses treatment Plaintiff received after the 2008 hearing. [T. 2-3]. In March and April 2009, Plaintiff reported that her legs were "going out on her," and an MRI was ordered because of continued hip and back pain. [T. 527-28]. In May 2009, Asheville Gastroenterology noted painful abdominal conditions, which were attributed as side effects of her chronic Vicodin use. She was assessed with non-alcohol fatty liver disease, GERD, and abdominal epigastric pain. Weight loss was encouraged to reduce the fatty liver disease. [T. 559]. In August 2009, she weighed 173 pounds [T. 517], and her hip pain continued. [T. 516]. In December 2009, she reported that she could not exercise, walk or cook

7

much due to hip pain.  She also developed diabetes mellitus during this time period.  [T. 511].

## V. THE ALJ'S DECISION

On June 14, 2008, the ALJ issued a decision denying the Plaintiff benefits.  [T. 18-25].  Proceeding to the sequential evaluation, the ALJ found that the Plaintiff's date last insured was September 30, 2005 and that she had not engaged in any substantial gainful activity since May 15, 2005.  [T. 20]. The ALJ then determined the following severe impairments:  hip disorders, chronic obstructive pulmonary disease and back disorder.  [T. 20].  The ALJ concluded that her impairments did not meet or equal a listing.  [T. 20].  He then determined that Plaintiff retained the residual functional capacity to perform a reduced range of sedentary work.  She was specifically limited to a sit/stand option; no exposure to fumes, odors, gases, dusts, poor ventilation or hazardous work environment; and not to climb ladders/scaffolds/ropes.  [T. 21]. He found that Plaintiff was able to perform her past relevant work as a housekeeper.  [T. 20].  Accordingly, he concluded that the Plaintiff was not disabled.  [T. 20].

## VI. DISCUSSION

On appeal, Plaintiff argues that the ALJ erred in improperly weighing the medical source opinions, in failing to consider all of her severe impairments, in relying on unsupported vocational expert testimony, in finding that the work she could perform existed in significant numbers, and in assessing her pain and symptoms. She also seeks remand so that the ALJ may consider new and material evidence in the form of the allowance of her subsequent disability claim.

For the reasons that follow, the ALJ's decision is reversed and this case is remanded for further proceedings before the Commissioner.

### A. The ALJ erred in failing to give proper weight to the opinions of Plaintiff's treating physician.

Dr. Kathy Robinson of the Buncombe County Health Center (formerly Health Department) was Plaintiff's primary care physician since prior to her May 15, 2005 onset date. The record demonstrates that Plaintiff visited Dr. Robinson quite frequently. Dr. Robinson managed her many medications and referred her to various specialists. Plaintiff asserts that this relationship entitles Dr. Robinson's opinion to controlling weight under Agency regulations.

Regulations dictate the ALJ's process for evaluating medical source evidence:

9

> Regardless of its source, we will evaluate every medical opinion we receive. Unless we give a treating source's opinion controlling weight under paragraph (d)(2) of this section, we consider all of the following factors in deciding the weight we give to any medical opinion: (1) Examining relationship; (2) Treatment relationship; (i) Length of the treatment relationship and the frequency of examination.(ii) Nature and extent of the treatment relationship.

20 C.F.R. § 404.1527(d).

Weighing evidence is part of the process of developing a residual functional capacity (RFC) assessment at step four. In assessing a claimant's RFC, the ALJ "may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and not due to his or her own credibility judgments, speculation or lay opinion." McGoffin v. Barnhart, 288 F.3d 1248, 1252 (10th Cir. 2002); see also Jackson v. Astrue, C/A No. 8:08-2855-JFA-BHH, 2010 WL 500449, at *7 (D.S.C. Feb. 5, 2010).

The only reference in the ALJ's decision to the medical relationship between Dr. Robinson and the Plaintiff was one sentence: "From April 22, 2005 to October 25, 2007, the claimant was treated at Buncombe County Health Department for hip dysplasia with nerve impingement/femoral head collapse and back/hip pain." [T. 22].[2] Similarly, the ALJ dispatched Dr.

---

[2]This finding is not entirely accurate, as the record demonstrates that Plaintiff began seeing Dr. Robinson as far back as January 13, 2004. [T. 407].

10

Case 1:10-cv-00273-MR   Document 12   Filed 12/20/11   Page 10 of 17

Robinson's opinion in a one-sentence analysis, finding that her opinion was "too restrictive in light of the medical record as a whole" and thus afforded it little weight. [T. 23]. Instead, he credited the opinions of the two State Agency physicians, Dr. Morton and Dr. Gardner, that Plaintiff was capable of light work. While finding that these opinions were entitled to "significant evidentiary weight," the ALJ noted that Plaintiff should further be limited to sedentary work due to her medical conditions. [Id.].

The ALJ's decision to attribute little weight to Dr. Robinson's opinion in favor of the opinions of Dr. Morton and Dr. Gardner is not supported by substantial evidence. Dr. Morton's October 4, 2005 opinion [T. 288-95] preceded Plaintiff's 2006 bilateral hip replacements, and thus does not take into account her limitations post-surgery. As for Dr. Gardner, he produced his February 8, 2006 opinion two weeks after her January 27, 2006 left hip replacement, at a time when she was still using a walker and anticipating a replacement of the other hip. [T. 296-303]. He projected that she would have a sedentary RFC. [T. 303]. The ALJ impermissibly ignored that projection, however, which corroborated Dr. Robinson's opinion, and instead discussed only the part corroborating his own preferred finding. See Murphy v. Bowen, 810 F.2d 433, 438 (4th Cir. 1987). As Dr. Robinson's opinion was supported

11

by objective evidence and was otherwise consistent with the longitudinal record, the Court concludes that the ALJ erred in failing to attribute more weight to it. 20 C.F.R. § 404.1527(d).

**B. The ALJ erred in failing to consider all of Plaintiff's severe impairments.**

The ALJ is required to consider obesity at every step of the sequential evaluation. SSR 02-1p at *3. Plaintiff asserts that the ALJ failed to comply with SSR 02-1p by omitting any consideration of obesity. Defendant asserts that the ALJ's obligation to consider obesity was never triggered because Plaintiff did not mention "obesity" in her initial claim materials or in her hearing testimony. [Doc. 11 at 8].

While Plaintiff did not use the term "obesity" in describing her impairments, her hearing testimony describes limitations commonly associated with obesity, see SSR 02-1p.[3] Further, the medical evidence of Plaintiff's obesity is abundant. The record contains many explicit notations of obesity or its hallmark findings of height, weight and body mass index (BMI). [T. 346, 528, 308, 556-82]. It is also replete with evidence of the physical

---

[3]Plaintiff testified to shortness of breath when "up moving around" [T. 602], gaining 35 pounds after her surgery T. 602-3], pain precluding exercise [T. 603], problems dressing [T. 603-04], and limitations on walking, sitting and standing [T. 595].

limitations and other ailments that SSR 02-1p relates to obesity.[4] Because the evidence of record gave notice to the ALJ of Plaintiff's obesity and its potentially limiting effects, his failure to consider the severity of this impairment and its potential effect on Plaintiff's RFC was improper.

Given the ALJ's RFC for a reduced range of sedentary work, considering the additional limitations from obesity could have resulted in the allowance of benefits.  The ALJ's failure, therefore, to consider her obesity and its limiting effects prejudiced the Plaintiff and requires a remand in this case.

### C. The ALJ erred in assessing Plaintiff's credibility and pain.

In challenging the ALJ's credibility assessment, Plaintiff asserts that the ALJ ignored significant medical evidence supporting her assertions of pain, and insufficiently articulated his rationale under SSR 96-7p.

The determination of whether a person is disabled by non-exertional pain or other symptoms is a two-step process.  The relevant step here is that

---

[4] A 2004 report noted obesity and that "[s]he has difficulty sitting up on her own, needed assistance." [T. 346]. In 2005 Dr. Harley noted that she weighed 154 pounds at 4'11". "By examination, she does have difficulty bending. She walks with a waddling gait and rotations of the hips is markedly decreased because of the loss of motion in the hips." [T. 308]. Dr. Robinson diagnosed diabetes mellitus in 2008, and noted that her legs were "going out on her." Plaintiff had continued hip and back pain, a weight of 175 pounds, a BMI of 35.3, and blood pressure at 142/74. [T. 528]. Dr. Robinson's opinion included limitations to never climb, balance, crouch, kneel or crawl, and to stoop occasionally. [T.150]. Weight loss was consistently encouraged. [T. 556-82].

the ALJ must evaluate "the intensity and persistence of the claimant's pain, and the extent to which it affects his ability to work." Craig v. Chater, 76 F.3d 585, 595 (4th Cir.1996). Specific factors evaluated include daily activities; the location, duration, frequency, and intensity of pain or other symptoms; precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of any medication taken to alleviate pain or other symptoms; and other treatment and measures taken for relief of pain or other symptoms. 20 C.F.R. § 416.929(c)(3)(i-vi); SSR 96-7p.

Having found severe impairments that could be expected to produce pain, the ALJ then addressed Plaintiff's testimony and some of the medical evidence in order to assess the credibility of her assertions of pain. The ALJ portrayed Plaintiff as testifying that she suffered from depression, but that she then conceded it was "only . . . a little depression." [T. 21]. Review of the record reveals, however, that the ALJ's characterization of this testimony is unwarranted. Although Plaintiff testified that she had "been a little depressed" [see T. 602], she never claimed to have been disabled as a result of depression. The ALJ's treatment of this evidence is a mischaracterization, and it does not support his credibility finding.

The same is true of the ALJ's treatment of the medical evidence. While he cited the records of orthopedist Tally Eddings, M.D. to note that the Plaintiff was "doing well" post-surgery [T. 23], he omitted the fact that at the time this notation was made, Plaintiff still needed to use a walker. [T. 279-80]. This fact greatly diminishes the significance of such a finding. Further, while the ALJ noted one instance where Plaintiff indicated that her pain had diminished [T. 23], the ALJ failed to discuss the multiple notations of continued hip pain throughout five years of treatment notes. By selectively quoting only from those parts of the record that are favorable to his decision, the ALJ essentially ignored an entire line of evidence. This is a practice which "falls well below the minimal level of articulation required by the Social Security Act." Diaz v. Chater, 55 F.3d 300, 307 (7th Cir.1995).

In assessing credibility, the ALJ must compare a claimant's subjective testimony to the objective medical and psychological evidence in the record. In this case, the ALJ's analysis was more in the nature of a cross-examination than an objective comparison. As such, the Court concludes that the ALJ's credibility findings are not entitled to deference. In addition, the unusually brief nature of the administrative hearing,[5] coupled with his clearly insufficient

---

[5] The ALJ restricted the scope of the hearing testimony to Plaintiff's current limitations only [T. 594], a restriction which resulted in a 14-minute hearing.

review of the evidence did not afford the ALJ the particularly unique "opportunity to observe the demeanor and to determine the credibility of the claimant" justifying special weight for his credibility opinion. See Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984). In light of the Court's decision to remand this case for further proceedings, Plaintiff's other assignments of error need not be addressed, although she is free to raise them upon remand.

## O R D E R

Accordingly, **IT IS, THEREFORE, ORDERED** that Plaintiff's Motion for Summary Judgment [Doc. 8] is **GRANTED**.

Pursuant to the power of this Court to enter a judgment affirming, modifying or reversing the decision of the Commissioner under Sentence Four of 42 U.S.C. § 405(g), the decision of the Commissioner is **REVERSED**, and this case is hereby **REMANDED** to the Commissioner for further administrative action consistent herewith.

**IT IS FURTHER ORDERED** that the Defendant's Motion for Summary Judgment [Doc. 10] is **DENIED.**

A judgment shall be entered simultaneously herewith.

**IT IS SO ORDERED.**         Signed: December 20, 2011

*[Signature]*
Martin Reidinger
United States District Judge

17